## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| KORI BALDERAZ<br>628 E. High St.<br>Saint Marys, OH 45885 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| AIRSTREAM, INC.<br>419 West Pike St.<br>Jackson Center, OH 45334 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED HEREIN** |
| **Serve Also:**<br>Airstream, Inc.<br>c/o Registered Agent CT Corporation<br>Systems (Stat. Agent)<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| and, | )<br>) | |
| BARBARA YATES<br>419 West Pike Street<br>Jackson Center, OH 45334 | )<br>)<br>) | |
| and, | )<br>) | |
| MARION SLATTER<br>419 West Pike Street<br>Jackson Center, OH 45334 | )<br>)<br>) | |
| and, | )<br>) | |
| MARK SHERRY<br>419 West Pike Street<br>Jackson Center, OH 45334 | )<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

Plaintiff, Kori Balderaz, by and through undersigned counsel, as his Complaint against Defendants, states and avers the following:

**PARTIES**

1. Balderaz is a resident of the city of St. Marys, Auglaize County, Ohio.

2. Defendant Airstream, Inc. is a foreign-incorporated company that conducts business within the state of Ohio.

3. The relevant location the events and omissions of this Complaint took place was 419 West Pike St., Jackson Center, OH 45334.

4. Airstream, Inc. ("Airstream") is, and was at all times hereinafter mentioned, Balderaz's employer within the meaning of The Americans with Disability Act ("ADA") 42 U.S.C. § 12101, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C §2000e *et seq.*, Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 et seq., and R.C. § 4112 *et seq.*

5. Upon information and belief, Defendant Barbara Yates ("Yates") is a resident of the state of Ohio.

6. Defendant Yates is and/or was an employee of Airstream.

7. Defendant Yates did, and at all times hereinafter mentioned, acted directly or indirectly in the interest of Airstream and/or within the scope of her employment at Airstream.

8. At all relevant times referenced herein, Defendant Yates supervised and/or controlled Balderaz's employment at Airstream.

9. Upon information and belief, Defendant Marion Slatter ("Slatter") is a resident of the state of Ohio.

10. Defendant Slatter is and/or was an employee of Airstream.

11. Defendant Slatter did, and at all times hereinafter mentioned, acted directly or indirectly in the interest of Airstream and/or within the scope of her employment at Airstream.

12. At all relevant times referenced herein, Defendant Slatter supervised and/or controlled Balderaz's employment at Airstream.

13. Upon information and belief, Defendant Mark Sherry ("Sherry") is a resident of the state of Ohio.

14. Defendant Sherry is and/or was an employee of Airstream.

15. Defendant Sherry did, and at all times hereinafter mentioned, acted directly or indirectly in the interest of Airstream and/or within the scope of his employment at Airstream.

16. At all relevant times referenced herein, Defendant Sherry supervised and/or controlled Balderaz's employment at Airstream.

17. Within 300 days of the adverse employment actions described herein, Balderaz dual filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2023-00584 ("EEOC Charge") and the Ohio Civil Rights Commission ("OCRC"), Charge No. DAYB6(30778)09232022 ("OCRC Charge").

18. On February 9, 2023, the OCRC issued and mailed Notice of Right to Sue letters to Balderaz regarding the Charges of Discrimination filed by Balderaz.

19. Balderaz received his Right to Sue letters from the OCRC in accordance with R.C. § 4112.052 – which has been attached hereto as Plaintiff's Exhibit 1.

20. Balderaz has properly exhausted his administrative remedies pursuant to R.C. § 4112.051.

21. Balderaz has timely filed this Complaint within the relevant statute of limitations pursuant to R.C. § 4112.052.

**JURISDICTION & VENUE**

22. All of the material events alleged in this Complaint occurred in or around Shelby County, Ohio.

23. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and/or (3).

24. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Balderaz is alleging federal law claims under the Title VII, ADA, and FMLA.

25. This Court has supplemental jurisdiction over Balderaz's state law claims pursuant to 28 U.S.C. § 1367, as Balderaz's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

26. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**FACTS**

27. Balderaz is a former employee of Airstream.

28. At all times noted herein, Balderaz was qualified for his position(s) at Airstream.

29. At all times noted herein, Balderaz could fully perform the duties of his position(s) with Airstream.

30. Balderaz, as an Mexican American, is in a protected class for his national origin.

31. Balderaz has been diagnosed with Bipolar Disorder, Post Traumatic Stress Disorder, High Blood Pressure, and suffered the loss of his left middle finger in late 2019, placing him in a protected class for his disabilities.

32. Balderaz gave notice of these disabilities to Airstream.

33. Balderaz worked for Airstream as a General Assembler from April 2014 until Airstream unlawfully terminated Balderaz on June 17, 2022.

34. In connection with his disabilities, Balderaz had been utilizing intermittent leave under the Family Medical Leave Act (FMLA) for two years prior to his termination.

35. Balderaz also falls under a protected class based on his disability and is protected from retaliation for utilizing FMLA leave.

36. Balderaz first requested FMLA leave in mid-2020.

37. Under the direction of his doctor, Balderaz was allotted four days a month for FMLA leave as necessary.

38. During 2020, Balderaz only used this intermittent leave sporadically.

39. However, this leave was recertified in 2021 and work stressors required Balderaz to utilize his leave more consistently.

40. At the time of his termination, Balderaz was still under approved FMLA intermittent leave.

41. Issues with Airstream first arose in 2020, when Balderaz was subjected to discriminatory comments by Josh Ott, an employee of Airstream.

42. Many of these comments included stereotypes based on Balderaz's national origin, such as: "you don't look Mexican;" "you probably want that Mexican pizza dontcha;" and "you guys like spicy shit."

43. Balderaz also overheard inappropriate comments relating to disabilities such as when Robert Wion said, "stop talking to me like I'm a retarded kid," and Ott responded, "well don't act like a retard."

44. Balderaz initially spoke with his supervisor Tim Feasel about the discriminatory comments he had been subjected to prior to December 2020.

45. Feasel never officially addressed or investigated Balderaz's complaints.

46. On December 8, 2020, Balderaz reached out to Airstream's Human Resources Department via email to complain about workplace harassment and racial profiling/bullying.

47. An hour after his complaint, Balderaz received a response that someone would be reaching out to discuss his concerns, however, no investigation was ever done into Balderaz's complaints.

48. Balderaz was dismayed by the lack of response from Airstream as they preach having a zero-tolerance policy for harassment and bullying, but clearly did not enforce it.

49. Balderaz worked in Airstream's paint shop, specifically working on windows, prior to July 2021.

50. Balderaz began working in Airstream's water check department in July 2021 and remained in this role until January 2022.

51. In January 2022, Balderaz returned to his previous position working on windows in the paint shop.

52. As Balderaz had extensive experience in the paint department, he took over a position previously held by Morgan (Last Name Unknown), a Caucasian female with no disabilities.

53. After Balderaz returned to the paint shop, Morgan began telling other employees that Balderaz "stole her job."

54. In late March or early April 2022, Barbara Yates became Balderaz's supervisor.

55. Shortly after Yates became Balderaz's supervisor, Yates took a particularly liking to Morgan and began treating Balderaz less favorably.

56. Shortly after his return to the paint shop, Balderaz noticed that Morgan was intentionally interfering with Balderaz's work.

57. In response, Balderaz reported Morgan's inappropriate behavior to Yates.

58. Balderaz was then transferred to a new role in the paint department.

59. In this new role, Balderaz would walk across the paint department a few times a day to check on inventory.

60. During these trips across the department floor, Balderaz would sometimes stop for a bathroom break as the medication he takes for his disability affects his bowels.

61. Soon after starting his new role, Balderaz noticed Yates was heavily securitizing his bathroom breaks.

62. It got to the point where Yates would linger near the bathroom anytime Balderaz used the toilet.

63. Notably, Yates did not hover near the bathroom when other employees took bathroom breaks.

64. In the beginning of May 2022, Yates wrote Balderaz up for excessive bathroom breaks.

65. When Balderaz received the write up, he explained to Yates that he required frequent bathroom breaks because of the medication he was on for his disabilities.

66. However, Yates refused to withdraw the write up and never addressed possible reasonable accommodations for Balderaz's medical needs.

67. After receiving this discriminatory write up, Balderaz reported Yates the following week for harassment and bullying to HR.

68. Balderaz specifically complained that Yates heavily scrutinized his bathroom breaks and provided names of several other employees without disabilities whom she treated more favorably.

69. In response to Balderaz's protected complaint, HR insisted that they would investigate the complaints and get back to Balderaz.

70. For the next several weeks, Balderaz heard nothing out of HR's alleged investigation, even after following up several times with the department.

71. After continuing to hear nothing from HR, Balderaz contacted Misty Clark for the second time on June 10, 2022, to inquire into the investigation.

72. However, Clark stated that she did not handle anything outside of attendance issues and would relay the message to Marion Slatter, Plant Manager.

73. After speaking with Clark, Balderaz again received no updates on the investigation from HR.

74. On June 17, 2022, Balderaz was contacted by Mark Sherry, Vice President of Human Resources.

75. Sherry informed Balderaz that he was being terminated based on allegedly taking too many bathroom breaks and for being away from his worksite.

76. Again, Balderaz had to explain that his medication required frequent bathroom breaks and offered to provide a doctors note to support his statement.

77. However, Sherry indicated that it was too late.

78. Balderaz responded that he had never been asked for medical documentation relating to his bathroom breaks and did not know it needed to be provided when starting a new medication.

79. Balderaz was under FMLA intermittent leave, which accounted for much of his time away from the work site, however this was not taken into account upon his termination.

80. During his employment with Airstream, Balderaz made several protected complaints regarding illegal behavior by Airstream.

81. Soon after making his complaints, Yates began retaliating against Balderaz.

82. The retaliation by Yates eventually culminated in Balderaz's wrongful termination.

83. On June 17, 2022, Airstream unlawfully terminated Balderaz's employment.

84. Airstream did not have an overriding justification for Balderaz's dismissal.

85. Alternatively, Airstream's cited reason for Balderaz's termination was pretextual.

86. Balderaz was discriminated against due to his national origin, disability, and/or use of FMLA leave.

87. Balderaz was terminated due to his race and disability and/or in retaliation for his opposition to discrimination in the workplace.

88. There was a causal connection between Balderaz's protected classes (national origin and disability) and complaints and Defendants' adverse actions taken against Balderaz.

89. Defendants' purported reason for Balderaz's termination is pretext for national origin and disability discrimination and/or retaliation for opposition to discrimination.

90. As a result of being discriminated against during his employment with Airstream, and being terminated from Airstream, Balderaz has had and continues to accrue damages based thereupon.

91. As a result of Airstream's acts and omissions, Balderaz has suffered, and will continue to suffer, damages, including economic, emotional distress and physical sickness damages.

92. As a direct and proximate result of Defendants' conduct, Balderaz suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.**

93. Balderaz restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

94. Balderaz is disabled.

95. In the alternative, Defendants perceived Balderaz as being disabled.

96. Balderaz's condition constituted a physical impairment.

9

97. Balderaz's condition substantially impaired one or more of his major life activities including working.

98. Defendants perceived Balderaz's condition to substantially impair one or more of his major life activities including working.

99. Defendants treated Balderaz differently than other similarly-situated employees based on his disabling condition.

100. Defendants treated Balderaz differently than other similarly-situated employees based on his perceived disabling condition.

101. Defendants terminated Balderaz's employment without just cause.

102. Alternatively, Defendants' cited reason for Balderaz's termination was pretext.

103. Defendants terminated Balderaz's employment based on his disability.

104. Defendants terminated Balderaz's employment based on his perceived disability.

105. Defendants violated R.C. § 4112.02 when it discharged Balderaz based on his disability.

106. Defendants violated R.C. § 4112.02 when it discharged Balderaz based on his perceived disability.

107. Defendants violated R.C. § 4112.02 by discriminating against Balderaz based on his disabling condition.

108. Defendants violated R.C. § 4112.02 by discriminating against Balderaz based on his perceived disabling condition.

109. Balderaz suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

110. As a direct and proximate result of Defendants' conduct, Balderaz suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA**

111. Balderaz restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

112. Balderaz is disabled.

113. In the alternative, Defendants perceived Balderaz as being disabled.

114. Balderaz's condition constituted a physical impairment.

115. Balderaz's condition substantially impaired one or more of his major life activities including working.

116. Defendants perceived Balderaz's condition to substantially impair one or more of his major life activities including working.

117. Defendants treated Balderaz differently than other similarly-situated employees based on his disabling condition.

118. Defendants treated Balderaz differently than other similarly-situated employees based on his perceived disabling condition.

119. Defendants terminated Balderaz's employment without just cause.

120. Alternatively, Defendants' cited reason for Balderaz's termination was pretext.

121. Defendants terminated Balderaz's employment based on his disability.

122. Defendants terminated Balderaz's employment based on his perceived disability.

123. Defendants violated the ADA when it discharged Balderaz based on his disability.

124. Defendants violated the ADA when it discharged Balderaz based on his perceived disability.

125. Defendants violated the ADA by discriminating against Balderaz based on his disabling condition.

126. Defendants violated the ADA by discriminating against Balderaz based on his perceived disabling condition.

127. Balderaz suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to the ADA.

128. As a direct and proximate result of Defendants' conduct, Balderaz suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF R.C. § 4112, *et seq.*

129. Balderaz restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

130. Balderaz is Mexican American, and thus is in a protected class for his national origin.

131. R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's national origin.

132. Defendants treated Balderaz differently than other similarly situated employees based upon his national origin.

133. On or about June 17, 2022, Defendants terminated Balderaz's employment without just cause.

134. Alternatively, Defendants' cited reason for Balderaz's termination was pretext.

135. At all times material herein, similarly situated non-Mexican-American employees were not terminated without just cause.

136. Balderaz's national origin was a determinative factor in Defendants' decision to terminate his employment.

137. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by treating Balderaz differently from other similarly situated employees outside his protected class.

138. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by applying its employment policies in a disparate manner based on Balderaz's national origin.

139. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by applying its disciplinary policies in a disparate manner based on Balderaz's national origin.

140. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by terminating Balderaz based on his national origin.

141. As a direct and proximate result of Defendants' acts and omissions, Balderaz has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII

142. Balderaz restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

143. Balderaz is Mexican American, and thus is in a protected class for his national origin.

144. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's national origin.

145. Defendants treated Balderaz differently than other similarly situated employees based upon his national origin.

146. On or about June 17, 2022, Defendants terminated Balderaz's employment without just cause.

147. Alternatively, Defendants' cited reason for Balderaz's termination was pretext.

148. At all times material herein, similarly situated non-Mexican-American employees were not terminated without just cause.

149. Defendants violated Title VII by treating Balderaz differently from other similarly situated employees outside his protected class.

150. Defendants violated Title VII by applying its employment policies in a disparate manner based on Balderaz's national origin.

151. Defendants violated Title VII by applying its disciplinary policies in a disparate manner based on Balderaz's national origin.

152. Defendants violated Title VII by terminating Balderaz based on his national origin.

153. As a direct and proximate result of Defendants' acts and omissions, Balderaz has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: RETALIATORY DISCRIMINATION

154. Balderaz restates each and every prior paragraph of this complaint, as if it were fully restated herein.

155. As a result of the Defendants' discriminatory conduct described above, Balderaz complained about the discrimination he was experiencing.

156. Subsequent to Balderaz's reporting of discrimination against him to his employer, Balderaz's employment was terminated.

157. Defendants' actions were retaliatory in nature based on Balderaz's opposition to the unlawful discriminatory conduct.

158. Pursuant to R.C. §4112.02(I), the ADA, and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

159. Balderaz suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to the ADA, Title VII and R.C. § 4112.01 *et seq*.

160. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Balderaz, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT VI: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION
### (Defendants Yates, Slatter, and Sherry Only)

161. Balderaz restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

162. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

163. Defendants Yates, Slatter, and Sherry aided, abetted, incited, coerced, and/or compelled Airstream's discriminatory termination of Balderaz.

164. Defendants Yates, Slatter, and Sherry aided, abetted, incited, coerced, and/or compelled Airstream's discriminatory treatment of Balderaz.

165. Defendants Yates, Slatter, and Sherry violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

166. Balderaz suffered emotional distress as a result of Defendants Yates', Slatter's, and Sherry's conduct, and is entitled to emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

167. As a direct and proximate result of Defendants Yates', Slatter's, and Sherry's conduct, Balderaz has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT VII: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

161. Balderaz restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

162. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

163. Airstream is a covered employer under the FMLA.

164. During his employment, Balderaz qualified for FMLA leave.

165. Defendants failed to properly advise Balderaz of his rights under the FMLA.

166. Defendants unlawfully interfered with Balderaz's exercise of his rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

167. As a direct and proximate result of Defendants' conduct, Balderaz suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

168. As a direct and proximate result of Defendants' conduct, Balderaz is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

## COUNT VIII: RETALIATION IN VIOLATION OF THE FMLA

169. Balderaz restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

170. During his employment, Balderaz qualified for and attempted to take FMLA leave.

171. There was a causal link between Balderaz's medical leave under the FMLA and Defendants' termination of Balderaz's employment.

172. Defendants actually terminated Balderaz for his FMLA use.

173. Defendants retaliated against Balderaz by terminating his employment.

174. Defendants' actions show that it willfully retaliated against Balderaz in violation of U.S.C. § 2615(a)

175. As a direct and proximate result of Defendants' wrongful conduct, Balderaz is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

176. As a direct and proximate result of Defendants' conduct, Balderaz suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**DEMAND FOR RELIEF**

WHEREFORE, Balderaz demands from Defendants the following:

a) Issue a permanent injunction:

   i. Requiring Defendants to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendants to expunge Balderaz's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Balderaz for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Balderaz's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

  */s/ Matthew G. Bruce*
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
    Trial Attorney
**SPITZ, THE EMPLOYEE'S LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
*Attorneys for Plaintiff Kori Balderaz*

## JURY DEMAND

Plaintiff Kori Balderaz demands a trial by jury by the maximum number of jurors permitted.

                                                      */s/ Matthew G. Bruce*
                                                      Matthew G. Bruce (0083769)